184

[597 NYS2d 754]

BRENDA G. STANAVICH, Respondent, v JOSEPH PAKENAS et al., Appellants.

Third Department, May 13, 1993

### APPEARANCES OF COUNSEL

*Stephen R. Spring,* Albany *(Mark P. Donohue* of counsel), for appellants.

*Insogna & McCoski,* Amsterdam *(Richard A. Insogna* of counsel), for respondent.

### OPINION OF THE COURT

MIKOLL, J.

Plaintiff commenced this action to recover damages for personal injuries allegedly sustained as a result of an automobile accident which occurred on November 23, 1981. At the time of the accident, plaintiff's vehicle was stopped at a traffic light in the City of Amsterdam, Montgomery County, when it was struck from behind by a vehicle owned by defendant Joseph Pakenas and operated by defendant Joseph Purtell. Following the accident, plaintiff was taken to the emergency room at a nearby hospital where she was treated and released. Thereafter, plaintiff continued to complain of and seek treatment for, *inter alia,* headaches, numbness and limited flexibility.

At the close of proof, Supreme Court denied defendants' motion for a directed verdict on the issue of Purtell's negligence and on the issue of whether plaintiff had sustained a serious injury within the meaning of Insurance Law § 5102 (d). The jury found that plaintiff had sustained a permanent consequential limitation of use of a body organ or member and awarded plaintiff $75,000 in damages. This appeal ensued.

Defendants urge that plaintiff failed to prove a perma-

nent consequential limitation of use of a body organ or member as a serious injury under Insurance Law § 5102 (d), so that their motion for a directed verdict should have been granted. We disagree and conclude that the jury's finding that plaintiff sustained a permanent consequential injury should be upheld. Viewing the evidence, as we must, in a light most favorable to the party prevailing at trial, the finding that plaintiff sustained a permanent consequential limitation of use of a body organ or member is not against the weight of the evidence *(see, Matter of Kornblum Metals Co. v Intsel Corp.,* 38 NY2d 376, 379). A jury's verdict may be set aside as against the weight of the evidence only where the evidence preponderates so greatly in the movant's favor that the jury could not have reached its conclusion on any fair interpretation of the evidence *(Walden v Otis El. Co.,* 178 AD2d 878, 878-879, *lv denied* 79 NY2d 758).

The medical evidence presented by plaintiff involved both subjective and objective indicia. Benjamin Button, an orthopedic surgeon, found a cervical strain, chronic upper thoracic strain and radiculitis, causing pain to radiate down the arms. He testified that the accident caused plaintiff's injuries, that they were permanent and a competent source of her pain and disability. James Meehan, a chiropractor, found pain upon motion of the cervical area, spasm on both sides of the neck, tightness in the shoulders and midback, decreased range of motion in the shoulder and arm numbness. He found that plaintiff's injuries were permanent, that they were the cause of her pain and disabilities and were attributable to the accident. Martin Farber, a rheumatologist, also found limited motion in the neck, one half to two thirds of normal rotation, tightness in the muscles of the neck and upper back, acute episodes of tendonitis of the left rotator cuff or bursitis. He testified that plaintiff's injuries were permanent and were a competent cause of her pain and disability. The testimony of all the treating physicians bear a uniformity as to the objective signs of injury, their permanency and their attribution to the accident.

Plaintiff testified as to the impact of the pain and injuries on her life. She said she has been in constant pain, that she is unable to do the things she used to enjoy—aerobics, water skiing, snow skiing and swimming—and that the accident adversely affected her ability to work. She also explained the interruptions in the treatment of her injuries as caused by the adverse effects of drugs upon her, her decision to try to live

and work without pain killers, and her eventual return to treatment because of an inability to cope with her injuries without medical intervention. She testified, too, that she is no longer able to work full time because of pain and weakness and that she lost work because of a physical inability to work full time. She had to give up work as a housekeeper and as a food coordinator at an adult home because of pain and physical disability.

Taken as a whole, the record presents sufficient medical proof of consequential and permanent physical limitations, including a significant deterioration in the quality of plaintiff's life. Each physician indicated that her injuries are permanent, that they were caused by the accident and are the cause of her disabilities. The import of the medical testimony is that her injuries are significant or consequential.

■ Defendants contend that Supreme Court erred by including in its jury instructions a charge that competent proof of pain, even of an intermittent nature, may form the basis of a serious injury. Defendants maintain that competent proof of pain is only relevant to permanent loss of use of a body organ, member or system.

We have rejected subjective evidence of pain alone as inadequate to prove serious injury (see, Rivera v Pula, 173 AD2d 1000; see also, Gray v Steger, 150 AD2d 962, 964). Where, however, objective proof of pain and/or expert testimony is offered to substantiate permanent consequential limitation, such proof is admissable on the question of serious injury. The experts here testified that plaintiff's large reduction in flexibility or range of motion was caused by pain and that it is consequential. This satisfied the statutory requirement of serious injury.

Defendants' contentions regarding the failure of plaintiff's medical witnesses to testify at length as to the extent of her disability and the minimal amount of testimony as to objective criteria go to weight and credibility and were correctly left to the jury (see, Holbrook v Jamesway Corp., 172 AD2d 910, 911). The objective medical evidence of plaintiff's pain and injuries supports a finding that she suffered a limitation which is significant or consequential.

CREW III, J. (dissenting). I respectfully dissent. It goes without saying that a motion for judgment pursuant to CPLR 4401 is appropriate "only where, giving the plaintiff the benefit of every favorable inference, there is no rational basis

on which a jury could reasonably find for the plaintiff" *(Walden v Otis El. Co.,* 178 AD2d 878, 879, *lv denied* 79 NY2d 758). Based upon my review of the record, I am of the view that Supreme Court erred in failing to grant defendants' motion.

In order for plaintiff to prevail here, the record must establish that she sustained a permanent consequential limitation of use of a body organ or member. "A limitation of use of a body organ or member means that the body organ or member does not operate at all or operates only in some limited way" (PJI 2:88F [Supp]). In turn, "consequential" means that the limitation so defined is important or significant *(see, Countermine v Galka,* 189 AD2d 1043, 1045; *Dwyer v Tracey,* 105 AD2d 476, 478). Ergo, the record must establish, by competent medical evidence, that some body organ or member of plaintiff operates in a limited fashion, that such limited operation is significant and that it is permanent. Additionally, that limitation *"must* be *tied* to an *objective,* underlying injury; mere subjective complaints * * * in the abstract are insufficient" *(Dubois v Simpson,* 182 AD2d 993, 995 [emphasis supplied]; *see, Scheer v Koubek,* 70 NY2d 678, 679; *Gaddy v Eyler,* 167 AD2d 67, 71, *affd* 79 NY2d 955; *Berben v Arain,* 124 AD2d 379, 381).

Here, Benjamin Button, the orthopedic surgeon who treated plaintiff from December 2, 1981 to June 6, 1990, testified that plaintiff initially came to him complaining of pain and stiffness in her neck and shoulders and numbness in her hands. Although plaintiff echoed these complaints throughout her course of treatment with Button, the blood work performed in March 1982, the X rays taken in March 1982 and November 1984, and the CAT scan performed in June 1987 were all normal. Additionally, while Button did detect some tenderness and stiffness in plaintiff's neck and shoulders at various times during her treatment and at one point noted a grating or snapping in plaintiff's left shoulder, Button testified that his final examination of plaintiff revealed that she had "good range of motion" in her neck and previous examinations conducted on June 6, 1987 and September 2, 1987 indicated that plaintiff had full range of motion in her right and left shoulders. Button's final diagnosis was chronic cervical strain, chronic upper thoracic strain and some radiculitis of the upper extremities. This latter condition is an inflammation of a particular nerve causing pain to radiate down the affected extremity.

Also testifying on plaintiff's behalf was James Meehan, a chiropractor who treated plaintiff on 33 occasions between June 11, 1987 and January 18, 1988. Meehan testified that upon his initial examination of plaintiff, he found that the muscles on both sides of plaintiff's neck were in spasm and that plaintiff's shoulder muscles were tight, with some tenderness and a decreased range of motion in plaintiff's left shoulder. Additionally, Meehan testified that he discovered some fixations, tightness and tenderness in plaintiff's spine and that plaintiff had developed three trigger points, referring to a chronic tightening of the muscle and fascia in a specific area. Meehan also indicated that "[v]arious orthopedic tests were positive". Meehan diagnosed plaintiff as having "multi cervical subluxation, fixations with chronic myofascitis, acute episodes of tendonitis of the left rotator cuff, or possible subdeltoid bursitis".

Finally, testimony was received from Martin Farber, a rheumatologist who treated plaintiff from October 18, 1990 to January 15, 1992. Farber diagnosed plaintiff as having fibromyalgia or myofascial pain syndrome, which is characterized by increased muscle tone and stiffness resulting in pain, and he documented increased muscle tone in plaintiff's neck, shoulders and upper back and a decreased range of motion in plaintiff's neck.

Contrary to defendants' assertion, the various findings of tenderness, tightness, muscle spasm, trigger points and decreased range of motion do qualify as objective proof of a physical injury (see generally, Lynch v Adirondack Tr. Lines, 169 AD2d 904, 906). Noticeably absent, however, is any medical testimony as to what activities plaintiff will be unable to perform as a result of the limitations described and opinion evidence as to their significance (see, Hemmes v Twedt, 180 AD2d 925, 926). Accordingly, there is a lack of medical evidence to support a finding that any of the limitations described are "important" or "significant" (Countermine v Galka, 189 AD2d 1043, 1045, supra). Although both Button and Meehan testified that plaintiff's injuries were permanent and a competent producing cause of her pain, neither quantified her limitations or degree of impairment. As for Farber, although his final examination of plaintiff apparently revealed that the range of motion in her neck was somewhere between 50% and 75% of normal, when asked whether plaintiff's injuries were permanent Farber responded, "in all likelihood she's going to have some degree of symptoms permanently"

(emphasis supplied), and stated that plaintiff would be "disabled from doing some things" due to pain. When asked on cross-examination whether it was his testimony that plaintiff "[could not] go out and work or do light housekeeping, or lead a relatively normal life", Farber replied, "I'm not saying that, no." I am constrained to conclude, therefore, that defendants' motion for a directed verdict on the issue of whether plaintiff suffered a serious injury within the meaning of Insurance Law § 5102 (d) should have been granted.

WEISS, P. J., YESAWICH JR. and CASEY, JJ., concur with MIKOLL, J.; CREW III, J., dissents in a separate opinion.

Ordered that the judgment is affirmed, with costs.