■ JOYCE JUNE, Appellant, v ROBERT F. GONET, Respondent. [750 NYS2d 143] —Kane, J. Appeal from an order of the Supreme Court (Mulvey, J.), entered July 3, 2001 in Tompkins County, which, inter alia, granted defendant's cross motion for summary judgment dismissing the complaint.

Plaintiff commenced this action to recover damages for injuries she allegedly sustained in an August 1995 motor vehicle accident when the automobile she was operating was struck from behind by an automobile owned and operated by defendant in the Town of Ulysses, Tompkins County. Following joinder of issue and discovery, plaintiff moved for partial summary judgment on the issue of liability and defendant cross-moved for summary judgment, challenging the existence of a serious injury as defined by Insurance Law § 5102 (d). Supreme Court granted defendant's cross motion and denied plaintiff's motion as moot. Plaintiff appeals.

Plaintiff does not challenge the sufficiency of the medical evidence submitted by defendant to meet his burden as the moving party (*see Gaddy v Eyler*, 79 NY2d 955, 956; *Licari v Elliott*, 57 NY2d 230, 235). Instead, it is plaintiff's contention that her affidavit is sufficient to raise a question of fact under the 90/180 category of serious injury and that the affidavit of her medical expert is sufficient to raise an issue of fact as to whether she sustained a "permanent consequential limitation of use of a body organ or member [and a] significant limitation of use of a body function or system" (Insurance Law § 5102 [d]).

With respect to plaintiff's contentions regarding the permanent consequential and significant limitation categories of Insurance Law § 5102 (d), it is well settled that a "plaintiff [is] required to show more than 'a mild, minor or slight limitation of use' " (*Mikl v Shufelt*, 285 AD2d 949, 950, quoting *King v Johnston*, 211 AD2d 907, 907; *see Murphy v Arrington*, 295

AD2d 865, 866-867). Additionally, in order to establish a "permanent consequential limitation of use of a body organ or member" (Insurance Law § 5102 [d]), plaintiff must demonstrate that the "claimed injury is consequential, that is, important or significant, and permanent, that is, the organ, member or function operates in some limited way or only with persistent pain" (*Hassam v Rock*, 290 AD2d 625, 625; *see Countermine v Galka*, 189 AD2d 1043, 1045). Likewise, with respect to the 90/180 category, "a plaintiff must demonstrate that his or her usual activities were curtailed 'to a great extent rather than some slight curtailment'" (*Van Norden-Lipe v Hamilton*, 294 AD2d 749, 749, quoting *Licari v Elliott, supra* at 236), and must present "competent medical evidence based upon objective medical findings and tests to support [the] claim of serious injury and to connect the condition to the accident" (*Blanchard v Wilcox*, 283 AD2d 821, 822; *see Van Norden-Lipe v Hamilton, supra* at 749; *Monk v Dupuis*, 287 AD2d 187, 191).

In this case, in opposition to defendant's cross motion, plaintiff proffered the affidavit of her expert, a neurosurgeon who first saw plaintiff almost one year after the accident, who diagnosed her with "cervical pain, lumbar pain, cervical radiculopathy, cervical disc herniation, and thoracic disc protrusion." He further stated that the "accident * * * produced a marked partial disability in [plaintiff's] work and activities of daily living * * * [as] a consequence of her cervical pain and cervical radiculopathy" and also aggravated plaintiff's preexisting osteophytic ridging and hemangiomas. Significantly, this diagnosis, allegedly based on "radiologic studies" and an MRI, contrasts markedly with his office notes. Specifically therein, plaintiff's expert states, inter alia, that an MRI of plaintiff's thoracic spine revealed a normal alignment of the vertebrae and "no evidence of disc herniation."

In that same report, a review of an MRI of plaintiff's cervical spine indicated that the C4-5 disc space, as well as that of C7-T1, was "unremarkable," and that at C5-6 there was "mild circumferential bulging." Only with regard to the C6-7 level was a "tiny left paramedian disc herniation" detected. Plaintiff's physician failed to indicate how this mild circumferential bulge related to plaintiff's particular physical complaints (*cf. Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 353). Nor did plaintiff's expert proffer an opinion regarding the permanence of plaintiff's injuries beyond the mere parroting of the applicable statutory language (*see Oberly v Bangs Ambulance*, 271 AD2d 135, 139, *affd* 96 NY2d 295; *Burnett v Zito*, 252 AD2d 879, 882). Unlike the plaintiff's treating physician in *Manzano*

*v O'Neil* (98 NY2d 345), one of the three cases decided by the Court of Appeals in *Toure v Avis Rent A Car Sys.* (*supra*), here plaintiff's physician failed to "describe[ ] the qualitative nature of plaintiff's limitations based on the normal function, purpose and use of her body parts" (*id.* at 355; *see Dufel v Green*, 84 NY2d 795, 798). Not only has plaintiff's physician failed to quantify plaintiff's limitations, but he has failed to correlate her cervical pain, cervical radiculopathy and preexisting osteophytic ridging and hemangiomas with her "inability to perform certain normal, daily tasks" (*Toure v Avis Rent A Car Sys.*, *supra* at 355). Moreover, although plaintiff's expert refers to a limitation in the use of plaintiff's arms, he provides no detail as to how this limitation resulted in what he described as a "marked partial disability in work" and her daily activities (*see id.*; *Mikl v Shufelt*, 285 AD2d 949, 950, *supra*; *Pantalone v Goodman*, 281 AD2d 790, 791). Accordingly, we agree with Supreme Court that the proof failed to overcome the evidence presented by defendant demonstrating the absence of serious injury sufficient to satisfy the significant limitation and permanent consequential limitation categories of Insurance Law § 5102 (d).

Likewise, plaintiff's submissions are insufficient to establish that she sustained an injury which prevented her "from performing substantially all of the material acts which constitute[d her] usual and customary daily activities" for 90 of the 180 days following the accident (Insurance Law § 5102 [d]). "[W]e emphasize that in every case, the medical affidavits and records submitted by the plaintiff in opposition are evaluated for consideration of the stated diagnosis as well as the stated basis for the diagnosis and the medical findings—including, *inter alia*, diagnostic tests relied upon, if any, and their results and how the findings relate to a plaintiff's injuries or diagnosis" (*Monk v Dupuis*, 287 AD2d 187, 191, *supra*).

Plaintiff's submissions include her own affidavit in which she claims to have missed 96 days of work, but provides no documentation to substantiate that claim. Nor does she allege with any specificity the number of activities in which she regularly engaged prior to the accident and in which she is unable to engage as a result of the accident. Furthermore, as Supreme Court properly observed, plaintiff's expert did not see plaintiff until well after the expiration of the 180-day period. Thus, while plaintiff's expert opined that the limitation in the use of her arms "produced a marked partial disability in work and activities of daily living," there is no indication that plaintiff was disabled for more than half of the first 180 days

following the accident (*see id.* at 190-191; *compare Van Norden-Lipe v Hamilton*, 294 AD2d 749, 749-750, *supra*). We agree with Supreme Court that this evidence is insufficient to raise a question of fact under the 90/180 category of serious injury. In light of our determination, the remaining issue raised by plaintiff with respect to liability is academic.

Mercure, J.P., Crew III, Spain and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.